FILED LAL

AUG 3 0 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

DANONE ASIA PTE. LTD. and AMOY FOOD LTD.,  )  05C 4999
                                            )  Civil Action No. _____
                        Plaintiffs,         )
                                            )  COMPLAINT  JUDGE MORAN
              -v-                MAGISTRATE JUDGE ASHMAN
                                            )
BEST FOOD SERVICES INC.,                    )
                                            )
                        Defendant.          )

Plaintiffs Danone Asia Pte. Ltd. ("Danone") and Amoy Food, Ltd. ("Amoy

Food"), as and for their complaint, allege on knowledge as to themselves and otherwise on

information and belief, as follows:

### NATURE OF ACTION

1.      This is an action for (i) infringement of plaintiffs' registered trademarks in

violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (ii) counterfeiting of plaintiffs'

registered trademarks in violation of Section 34 of the Lanham Act, 15 U.S.C. § 1116(d);

(iii) false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C.

§1125(a); (iv) trademark and trade dress infringement and unfair competition under Illinois law;

(v) dilution of plaintiffs' registered trademarks in violation of Section 43(c) of the Lanham Act,

15 U.S.C. § 1125(c); and (vi) dilution of plaintiffs' trademarks under Illinois law.  Plaintiffs'

claims arise out of defendant's unlawful sale of counterfeit soy sauce products bearing

trademarks that are unauthorized copies of plaintiffs' registered and common law trademarks and

trade dress.  As a direct consequence of defendant's wrongful conduct, (i) plaintiffs have been

directly and irreparably injured because defendant is deliberately trading on plaintiffs'

trademarks and trade dress and the goodwill associated with them; and (ii) the purchasing public

has been deceived because defendant is passing off bogus products as authentic. This action seeks to stop defendant before it causes further injury.

## JURISDICTION AND VENUE

2.       This Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332(a)(2), 1338 and 1367(a). The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens or subjects of a foreign state and citizens of a state.

3.       Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because defendant resides in this District and a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this District.

4.       Defendant is doing and transacting business in this District, has committed tortious acts within this District, and is otherwise subject to the jurisdiction of the Court. Defendant has a presence or engages in the solicitation of business in the State of Illinois, derives substantial revenue from the sale of goods in the State of Illinois and has committed acts causing injury to plaintiffs within the State of Illinois. Defendant's acts confer *in personam* jurisdiction over it.

## THE PARTIES

5.       Plaintiff Danone is a corporation organized and existing under the laws of Singapore, with its principal place of business at 1 Temasek Avenue, #34-02 Millenia Tower, Singapore 039192, Singapore. Danone is the parent company of plaintiff Amoy Food, a company with its principal place of business at Tai Po Industrial Estate, 11-15 Dai Fu Street, Tai Po, N.T., Hong Kong.

6.      Defendant Best Food Services, Inc. ("Best Food") is a corporation organized and existing under the laws of Illinois, with its principal place of business at 7131 W. 61st Street, Chicago, Illinois.

**FACTS COMMON TO ALL COUNTS**

**Amoy Food's Business**

7.      Since 1908, Amoy Food has been engaged in the production, advertising, promotion and sale of Asian food products; it now sells those products in more than forty countries throughout the world.  Founded in southern China, Amoy Food's commitment to quality and authenticity and its adherence to exacting standards using traditional Chinese recipes have earned it a reputation for excellence throughout the global food service community.

8.      Among the food products sold by Amoy Food are soy sauce products. Soy sauce products are a basic flavor enhancer in many Chinese dishes, either as a cooking ingredient or table condiment.

9.      Amoy Food's method for producing soy sauce products has been refined through years of experience, using the same basic methods adopted in 1927.  First, it steams top-quality soybeans, then mixes them with wheat flour, and finally soaks them in salt water to release their protein component.  The mixture is then allowed to ferment for six months, at which time the sauce is filtered.

10.     Amoy Food's means of production derive from its know-how of traditional methods for producing Oriental sauces combined with modern techniques.  Amoy Food employs food scientists to help ensure that Amoy Food's soy sauce products are of the highest standards and meet consumer demands.  For example, a few years ago, Amoy Food conducted a substantial analysis and review of the fermentation process used for production of its

3

soy sauce products in conjunction with the University of Hong Kong and the University of Manchester, which has contributed to the superior quality of Amoy Food's present production processes.

11. Amoy Food's production facilities have received international recognition and certification, and satisfy the stringent inspection regimens employed by United States government entities such as the Department of Agriculture, as well as review by similar agencies in other countries.

12. Quality is one of Amoy Food's highest priorities. From ingredients to end products, every stage of the production process is monitored by a sophisticated quality control system designed to ensure that Amoy Food's products, including its soy sauce products, meet its stringent quality control measures.

**Amoy Food's Marks**

13. Amoy Food has used the mark "AMOY" on soy sauce products in the United States since 1954. Danone has registered it with the United States Patent and Trademark Office (the "PTO"), Registration Nos. 1,095,359, 2,178,809, and 2,715,913, for a variety of goods including soy sauce products (collectively referred to as the "AMOY Marks"). Attached hereto as Exhibit 1 are copies of these registrations.

14. Amoy Food has used the mark "GOLD LABEL SOY SAUCE" on soy sauce products in the United States since 1983. The PTO has issued a "Notice of Allowance" in response to Danone's application to register this mark in connection with soy sauce products, thereby indicating that the PTO will register the mark once Danone submits an example of its use of this mark. Attached hereto as Exhibit 2 is a copy of the Notice of Allowance.

4

15.     Amoy Food sells a version of its GOLD LABEL SOY SAUCE products in a 63-ounce metal container primarily to the restaurant trade. This container, which is sold only in the United States, bears a unique trade dress consisting of the following elements:

 a. the AMOY trademark;

 b. the GOLD LABEL SOY SAUCE trademark in both English and in Chinese characters (appearing just below the English language version of the mark);

 c. orange color for the lettering used for the AMOY and GOLD LABEL SOY SAUCE marks, black color for the generic product information and yellow background color.

This trade dress is referred to herein as the "Amoy Food Metal Container." The matter appearing on the Amoy Food Metal Container is arbitrary and inherently distinctive, and serves no function other than acting as an indicator of source. Attached hereto as Exhibit 3 is a copy of a photograph showing the use of the AMOY and GOLD LABEL SOY SAUCE marks and the Amoy Food Metal Container.

16.     In the course of selling the Amoy Food Metal Container, Amoy Food uses a corrugated package that holds six cans. This corrugated packaging bears a unique trade dress consisting of the following elements:

 a. the AMOY trademark, and the GOLD LABEL SOY SAUCE trademark in both English and in Chinese characters (appearing just above the English language version of the mark);

 b. a five digit alphanumeric code that identifies the date when the products were packaged. This alphanumeric code appears in a "dot-matrix" format that is the only use of this print format on the package. Amoy Food's alphanumeric code is not printed with the same degree of sharpness and uniformity found in the other printed elements appearing on the packaging.

This trade dress is referred to herein as the "Amoy Food Six-Pack." The matter appearing on the Amoy Food Six-Pack is arbitrary and inherently distinctive, and serves no function other than

acting as an indicator of source. Attached hereto as Exhibit 4 is a copy of a photograph showing the Amoy Food Six-Pack. (The AMOY and GOLD LABEL SOY SAUCE marks, the Amoy Food Metal Container and the Amoy Food Six-Pack are collectively referred to herein as the "AMOY FOOD MARKS.")

17. All of the marks referenced in the complaint pertaining to plaintiffs' products are owned by Danone and licensed to Amoy Food, its wholly owned subsidiary. Amoy Food is controlled by and a related company of Danone, and Amoy Food's use of the marks inures to Danone's benefit pursuant to Section 5 of the Lanham Act, 15 USC sec. 1055, and the common law.

**Amoy Food's Sales and Advertising**

18. Amoy Food's soy sauce products are the best-selling soy sauce products in several markets throughout the world, including Hong Kong and the United Kingdom. Amoy Food commenced the sale of soy sauce products bearing one or more of the AMOY FOOD MARKS in the United States in 1954, and its sales have grown substantially since then.

19. In the United States, Amoy Food sells these products to its exclusive importer, Mon Chong Loong Trading Corp. ("Mon Chong"). In the last five years, Amoy Food has sold approximately $30 million worth of soy sauce products bearing the AMOY FOOD MARKS in the United States, with the eventual retail value of those products being significantly higher.

20. Amoy Food promotes and markets the soy sauce products sold under the AMOY FOOD MARKS to both its immediate and ultimate customers for these products. During the last five years, Amoy Food spent approximately $600,000 in the United States for

6

these advertising and promotional efforts, with its importer and distributors contributing further amounts.

21.     By reason of the amount of sales of Amoy Food's soy sauce products bearing the AMOY FOOD MARKS, and the amount of advertising and promotion that Amoy Food has invested in those soy sauce products, the AMOY FOOD MARKS have acquired a secondary meaning among the relevant public indicating that Amoy Food is the source of the soy products bearing those symbols.

22.     By reason of the foregoing, the AMOY FOOD MARKS have come to mean to the general public an indicator of high-quality goods originating with Amoy Food.

23.     The AMOY FOOD MARKS have thus acquired a distinctive and secondary meaning and become a valuable symbol of substantial goodwill for Amoy Food. The goodwill represented by the AMOY FOOD MARKS is of tremendous value to Amoy Food.

**Defendant's Wrongful Conduct**

24.     Defendant is in the business of selling food products. It sells soy sauce and other food products to restaurants and other entities.

25.     Defendant has secretly embarked on a scheme to unlawfully trade on the AMOY FOOD MARKS. The soy sauce products sold by defendant bears trademarks and trade dress identical to the AMOY FOOD MARKS, including the use of the following distinctive features appearing on the Amoy Food Metal Container: the AMOY and GOLD LABEL SOY SAUCE marks, orange lettering for these marks and black lettering for the generic product information, and a background yellow color. Attached hereto as Exhibit 5 is a copy of a photograph showing defendant's container for its soy sauce products. In addition, the six-pack packaging used by defendant employs the same distinctive features appearing on the Amoy Food Six-Pack: the AMOY and GOOD LABEL SOY SAUCE marks, the legend,

7

"MANUFACTURED BY: AMOY FOOD, LTD.," and a 5-digit dot matrix alphanumeric code.

Attached hereto as Exhibit 6 is a copy of a photograph showing defendant's corrugated

packaging for its containers.

        26.     Notwithstanding defendant's attempt to create a container and packaging

identical to plaintiffs' Amoy Food Metal Container and Amoy Food Six-Pack, there are

sufficient differences demonstrating the counterfeit nature of these items, as follows:

    a.     as to the soy sauce product sold by defendant, chemical analysis conducted by plaintiffs reveals that at least 3 of the tested values are outside specification tolerances for the Amoy Food authentic soy sauce;

    b.     there are miniscule differences in the printing on the back of the metal containers visible only through a side-by-side comparison of the containers, as follows:

        -- in the words, "*Percent Daily Values (DV)...." appearing on the containers, there is a space between the word "Values" and the parenthetical "(DV)" on plaintiffs' authentic container, but no space appears between these items on defendant's counterfeit product;

        -- in the address, "15, DAI FU STREET" appearing on the containers, there is a space between the comma following the number "15" and the word "DAI" on plaintiffs' authentic product, but no space appearing between these items on defendant's counterfeit product;

        -- in the two nutrition tables appearing on the containers, the numbers appearing in the two columns under the heading, "%DV*", align perfectly on plaintiffs' authentic product, but are misaligned on defendant's counterfeit product;

    c.     there are miniscule differences visible only through a side-by-side comparison of the corrugated packaging, as follows:

        -- the alphanumeric code on the authentic Amoy Food Six-Pack is not sharply printed, with the number printed in an asymmetric fashion, and is frequently smeared; the code appearing on defendant's corrugated packaging is sharp, symmetric and does not appear susceptible to smearing; and

-- the words GOLD LABEL SOY SAUCE, appearing below the Chinese characters, do not align on defendant's packaging in the same manner as they do on plaintiffs' authentic corrugated packaging.

Although these differences demonstrate the counterfeit nature of defendant's products, defendant's customers are not likely to recognize them.

27.     Defendant has adopted and is using copies of the AMOY FOOD MARKS with full knowledge of Amoy Food's prior extensive use of them and of the goodwill associated with such use, and for the sole purpose of exploiting the goodwill developed by Amoy Food in its soy sauce products and to divert sales from it.

28.     Had it chosen to do so, defendant could have used an almost limitless number of trademarks, background colors, text colors and graphics for its soy sauce products and the packaging for them, rather than deliberately copying the arbitrary and distinctive AMOY FOOD MARKS.  Defendant's conduct in selling products bearing a copy of the indicators of origin represented by the AMOY FOOD MARKS serves as an admission by defendant of the acquisition of secondary meaning for the AMOY FOOD MARKS.

29.     Defendant's wrongful conduct has directly and seriously damaged plaintiffs.  Amoy Food and its authorized importer and distributors have lost substantial sales, and Amoy Food's customers are losing confidence in it because the counterfeit products have been sold, and are continuing to be sold, by defendant at prices below those at which authorized distributors can profitably sell genuine soy sauce products purchased from Amoy Food.

30.     By reason of defendant's wrongful conduct, purchasers are being deceived into believing that defendant's products are authentic products, and Amoy Food is thereby losing sales that it otherwise would have made but for defendant's action.

31.     Defendant is using the AMOY FOOD MARKS without plaintiffs' authorization or consent.   As a result of defendant's wrongful conduct, plaintiffs have lost their right to control the reputation generated under the AMOY FOOD MARKS.

## COUNT I
### (Trademark Infringement
### in Violation of 15 U.S.C. §1114)

32.     Plaintiffs repeat and reallege paragraphs 1 through 31 as if set forth in full herein.

33.     Defendant has intentionally, knowingly and willfully infringed on the AMOY Marks by selling soy sauce products in the United States with a mark that is an infringement of the AMOY Marks.

34.     Defendant's sales of products described in the preceding paragraph have caused, and are likely to continue to cause, confusion or mistake or to deceive and, in particular, tend to and do falsely create the impression that the products sold by defendant are authorized, sponsored or approved by plaintiffs, when in fact they are not.

35.     By reason of the foregoing, defendant has infringed plaintiffs' AMOY Marks in violation of 15 U.S.C. §1114.

36.     By reason of the foregoing, plaintiffs have suffered, and are continuing to suffer, irreparable harm and damage, including a diversion of sales from them to defendant and a loss of goodwill.

37.     Plaintiffs have no adequate remedy at law.

## COUNT II
### (Counterfeiting of a Registered Trademark
### in Violation of 15 U.S.C. §1116)

38.     Plaintiffs repeat and reallege paragraphs 1 through 37 as if set forth herein.

10

39.     Defendant has used a mark that is identical to, or substantially indistinguishable from, the AMOY Marks in connection with the sale of its products. Defendant has used the marks intentionally, knowing such are counterfeit, in connection with the sale, offering for sale or distribution of its goods.

40.     Defendant's acts have been willful, intentional or in reckless disregard of plaintiffs' rights.

41.     By reason of the foregoing, defendant has committed acts of counterfeiting in violation of 15 U.S.C. §1116(d).

42.     By reason of the foregoing, plaintiffs have suffered, and are continuing to suffer, irreparable harm and damage, including a diversion of sales from them to defendant and a loss of goodwill.

43.     Plaintiffs have no adequate remedy at law.

### COUNT III
### (False Designation of Origin and False
### Representations under 15 U.S.C. § 1125(a))

44.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 43 as if fully set forth herein.

45.     With full knowledge of the widespread recognition of the AMOY FOOD MARKS among the relevant public, and with specific intent to exploit that recognition, defendant has undertaken to market and sell soy sauce products under marks that are identical to the AMOY FOOD MARKS. Defendant intends purchasers to believe that its products are authorized, sponsored or approved by plaintiffs.

46.     By reason of defendant's use of the AMOY FOOD MARKS, or marks confusingly similar thereto, the public is being misled as to the nature and quality of the products being sold by defendant, in violation of Section 43(a) of the Lanham Act.

11

47. By reason of the foregoing, defendant has used in commerce, on or in connection with goods or services, a false designation of origin, a false or misleading description of fact or a false or misleading representation of fact, which is likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of defendant with Amoy Food, the origin, sponsorship or approval of defendant's products by Amoy Food, or which misrepresents the nature, characteristics, qualities or geographic origin of defendant's products. Defendant has full knowledge of the falsity of such designations of origin or such descriptions or representations.

48. Plaintiffs have suffered and will continue to suffer irreparable harm as a result of defendant's activities. Unless preliminarily and permanently restrained and enjoined, defendant will continue to act in the unlawful manner complained of herein, all to plaintiffs' irreparable damage. Plaintiffs' remedy at law is not adequate to compensate them for the injuries suffered and threatened.

**COUNT IV**
**(Common Law Trademark Infringement and Unfair Competition**
**and under Illinois Trademark Registration and Protection Act)**

49. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 48 as if fully set forth herein.

50. Defendant's acts in selling products bearing the AMOY FOOD MARKS, or marks confusingly similar thereto, constitute unlawful conduct, unfair trade practices, trademark infringement, and unfair competition under the common law of the State of Illinois and Illinois statutory law, in that defendant has misappropriated the goodwill of represented by the AMOY FOOD MARKS and plaintiffs' expenditure of funds in the development and promotion of those marks and the goodwill residing therein.

51.     Plaintiffs have suffered and will continue to suffer irreparable harm as a result of defendant's activities.  Unless preliminarily and permanently enjoined, defendant will continue to act in the unlawful manner complained of herein, all to plaintiffs' irreparable harm. Plaintiffs' remedy at law is not adequate to compensate them for the injuries suffered and threatened.

## COUNT V
### (Federal Dilution)

52.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 51 as though fully set forth herein.

53.     The AMOY and GOLD LABEL SOY SAUCE marks are "distinctive" and "famous" in connection with soy sauce products, as those terms are understood within the meaning of 15 U.S.C. §1125(c).  Defendant's adoption and use of  infringements and counterfeits of these marks causes, and will continue to cause, dilution of the distinctive quality of these marks.  Defendant's acts in selling goods are done with the willful intent to trade on Amoy Food's reputation or to cause dilution of the distinctive quality of those marks.

54.     By reason of the foregoing, plaintiffs have suffered, and are continuing to suffer, irreparable harm and damage as a result of defendant's activities.  Unless preliminarily and permanently restrained and enjoined, defendant will continue to act in the unlawful manner complained of herein, all to plaintiffs' irreparable damage.

55.     Plaintiffs have no adequate remedy at law.

## COUNT VI
### (State Law Dilution under Illinois Trademark Registration and Protection Act)

56.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 55 as though fully set forth herein.

57.     The AMOY Marks and GOLD LABEL SOY SAUCE mark are "famous" and "distinctive" in connection with soy sauce products. Defendant's adoption and use of infringements and counterfeits of those marks, causes and will continue to cause, dilution of the distinctive quality of these marks and injure the business reputation of those marks. Defendant's acts in selling goods are done with the willful intent to trade upon Amoy Food's reputation or to cause dilution of the distinctive quality of those marks under Illinois law.

58.     Plaintiffs have no adequate remedy at law.

WHEREFORE, plaintiffs demand:

1.     that defendant, its officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with defendant, be temporarily restrained, and preliminarily and permanently enjoined, from manufacturing, promoting, advertising and selling any products bearing any one or more of the following:   the AMOY and GOLD LABEL SOY SAUCE marks, the Amoy Food Metal Container and the Amoy Food Six-Pack, in any manner, and from using any mark or dress confusingly similar to one or more of them; and from impliedly or expressly representing that any of the products or services sold by defendant are in any way authorized, sponsored or approved by plaintiffs, or with the products or services sold by them;

2.     that defendant be required to send a letter by certified mail, return receipt requested, in a form approved by plaintiffs, to each of its customers to whom it has sold counterfeit products, instructing them not to sell or use these counterfeit products, indicating that defendant shall refund to them the cost of these counterfeit products, and requiring them to return these counterfeit products to defendant's location at defendant's expense;

3.     that defendant be required to place and pay for corrective advertising to inform its customers and the general public that the products it sold were counterfeit, were infringing, were not genuine and to otherwise cure the effects of its counterfeiting, infringement and false and misleading statements;

4.     that defendant be required to pay to plaintiffs damages in a sum to be determined at trial; to account for all gains, profits and advantages derived by defendant from the sale or advertisement of any product or service with the use of any one or more of the AMOY FOOD MARKS, or any mark or dress confusingly similar thereto; and that defendant pay statutory damages to be awarded by the Court;

5.     that plaintiffs be awarded treble damages, punitive damages, reasonable attorneys' fees and the costs and disbursements of this action, and prejudgment interest;

6.     that any products or promotional materials, and documents relating thereto, in the possession, custody or control of defendant, bearing counterfeits of one or more of the AMOY Marks and any articles used to produce same, be seized and impounded pending final resolution of this action, and at such time be permanently destroyed, with or without any further notice;

7.     that defendant be required to file with this Court and serve on plaintiffs a report in writing under oath setting forth in detail the manner in which it has complied with the terms of any injunction entered by this Court; and

8.      that plaintiffs have such other and further relief as the Court deems just

and equitable.

Dated:   Chicago, Illinois           PATTISHALL, McAULIFFE, NEWBURY,
         August 30, 2005              HILLIARD & GERALDSON


                                      By _____
                                          Robert M. Newbury
                                          Robert W. Sacoff
                                          Matthew A. Griffin
                                          311 South Wacker Drive
                                          Suite 5000
                                          Chicago, Illinois 60606
HUGHES HUBBARD & REED LLP                 (312) 554-8000
Julius Rabonowitz
Daniel H. Weiner
Natasha N. Reed
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

Attorneys for Plaintiffs


973348_1.DOC


16

# EXHIBIT 1

Int. Cl.: 29, 30

Prior U.S. Cl.: 46

## United States Patent and Trademark Office

Reg. No. 1,095,359

Registered July 4, 1978

## TRADEMARK
### Principal Register



The Amoy Canning Corporation (Hong Kong) Limited
(Hong Kong corporation)
53 Ngau Chi Wan
Kowloon, Hong Kong

For: EDIBLE OILS, WATER CHESTNUTS, SALTED BLACK BEANS, BEAN SPROUTS, BAMBOO SHOOTS, LYCHEES, AND GINGER MARMALADE, in CLASS 29 (U.S. CL. 46).

First use July 22, 1957; in commerce July 22, 1957.

For: GINGER AND SAUCES—NAMELY, SOY SAUCE, CHILI SAUCE, PLUM SAUCE, MUSHROOM SAUCE, YELLOW BEAN SAUCE, AND BARBECUE SAUCE—in CLASS 30 (U.S. CL. 46).

First use Mar. 1, 1952; in commerce May 1, 1954.

Ser. No. 57,732, filed July 15, 1975.

JOHN C. DEMOS, Supervisory Examiner

A. B. DAVIDSON, Examiner

Int. Cl.: 30

Prior U.S. Cl.: 46

**Reg. No. 2,178,809**

## United States Patent and Trademark Office

Registered Aug. 4, 1998

### TRADEMARK
### PRINCIPAL REGISTER



DANONE ASIA PTE LTD (SINGAPORE LIMIT-
ED LIABILITY COMPANY)
1 TEMASEK AVENUE
#34–02 MILLENIA TOWER
SINGAPORE, SINGAPORE 039192 ASSIGNEE
OF AMOY INDUSTRIES (INTERNATIONAL),
LTD. (HONG KONG CORPORATION) TAI
PO, NEW TERRITORY, HONG KONG

FOR: SAUCES, IN CLASS 30 (U.S. CL. 46).

FIRST USE 5–0–1996; IN COMMERCE
5–0–1996.
OWNER OF U.S. REG. NO. 1,095,359.
THE CHINESE CHARACTERS IN THE
MARK TRANSLITERATE TO "TOH TAI", AND
THIS MEANS "TO SIFT, BIG" IN ENGLISH.

SN 74–674,666, FILED 5–16–1995.

LINDA M. DWYER, EXAMINING ATTORNEY

Int. Cl.: 30

Prior U.S. Cl.: 46

## United States Patent and Trademark Office

**Reg. No. 2,715,913**
Registered May 13, 2003

## TRADEMARK
### PRINCIPAL REGISTER



DANONE ASIA PTE. LTD. (SINGAPORE COR-
PORATION)
1. TEMASEK AV. 34-02 MILLENIA TOWER
SINGAPORE 03192, SINGAPORE

FOR: POTSTICKERS; CHINESE DIM SUM; SAU-
CES; DUMPLINGS, NAMELY, SHAOMAI, SHRIMP
SHAOMAI; DUMPLINGS FILLED PRIMARILY
WITH SHRIMP IN A TRANSLUCENT PASTRY,
NAMELY HARGOW; AND DUMPLINGS, IN CLASS
30 (U.S. CL. 46).

FIRST USE 5-0-1996; IN COMMERCE 5-0-1996.

OWNER OF U.S. REG. NOS. 1,050,831, 1,095,359,
AND 2,178,809.

THE CHINESE CHARACTERS IN THE MARK
TRANSLITERATE TO "TOH TAI", AND THIS
MEANS "TO SIFT, BIG" IN ENGLISH.

SN 75-458,556, FILED 3-27-1998.

BARBARA A. LOUGHRAN, EXAMINING ATTOR-
NEY

# EXHIBIT 2

U.S. Patent and Trademark Office (USPTO)                    Page 01 of 01

# NOTICE OF ALLOWANCE

**NOTE:** If any data on this notice is incorrect, please fax a request for correction to the Intent to Use Unit at 703-746-3400. Please include the serial number of your application on ALL correspondence with the USPTO.

### ISSUE DATE: Feb 8, 2005

PERLA M. KUHN                                        ATTORNEY
HUGHES HUBBARD & REED LLP                   REFERENCE NUMBER
One Battery Park Plaza                               70451.0037
New York, NY 10004

**STATUTORY PERIOD**

**EXPIRES** 8 | 8 | 05

## ** IMPORTANT INFORMATION: 6 MONTH DEADLINE **

You filed the trademark application identified below based upon a bona fide intention to use the mark in commerce. You must use the mark in commerce and file a Statement of Use (a.k.a. Allegation of Use) before the USPTO will register the mark. You have SIX (6) MONTHS from the ISSUE DATE of this Notice of Allowance (NOA) to file either a Statement of Use, or if you are not yet using the mark in commerce, a Request for Extension of Time to File a Statement of Use ("Extension Request"). If you file an extension request, you must continue to file a new request every six months until the Statement of Use is filed. Applicant may file a total of five (5) extension requests. FAILURE TO FILE A REQUIRED DOCUMENT DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE <u>ABANDONMENT</u> OF YOUR APPLICATION.

Please note that both the "Statement of Use" and "Extension Request" have many legal requirements including fees. Therefore, we encourage use of the USPTO forms, available online at http://www.uspto.gov/teas/index.html (under "File a PRE-registration form"), to avoid the possible omission of important information. Please note that the Trademark Electronic Application System (TEAS) provides line-by-line help instructions for completing the Extension Request or Statement of Use forms online. If you do not have access to the Internet, you may call 1-800-786-9199 to request the printed form(s).

### The following information should be reviewed for accuracy:

SERIAL NUMBER: 78/256779
MARK:           GOLD LABEL SOY SAUCE
OWNER:          Danone Asia Pte. Ltd.
                1 Temasek Avenue #34-02 Millenia Tower
                Singapore, SINGAPORE  039192

This application has the following bases, but not necessarily for all listed goods/services:
    Section 1(a): NO        Section 1(b): YES        Section 44(e): NO

### GOODS/SERVICES BY INTERNATIONAL CLASS

030-Sauces, namely, soy sauce.

ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

# EXHIBIT 3



Plaintiffs' Authentic
AMOY FOOD METAL CONTAINER

# EXHIBIT 4



**Plaintiffs' Authentic
AMOY FOOD SIX-PACK**

# EXHIBIT 5

# EXHIBIT 6

